UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
ROBERT LESAGE,                      )
                                                    )
                    Plaintiff,          )
                                                    )
v.                                                  )          Civil Action No. 13-11629-NMG
                                                    )
GINA SPENCER-FAIRE, R.N., et al.,   )
                                                    )
                    Defendants.         )
_____ )

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Docket No. 55]

February 3, 2016

Boal, M.J.

      Pro se plaintiff Robert LeSage, who is civilly committed at the Massachusetts Treatment Center, alleges that the Defendants exhibited deliberate indifference to his medical needs in violation of 42 U.S.C. § 1983.  Docket No. 1.   Defendants Gina Spencer-Faire, Carol McLellan, and Lucy Rounsville have moved for summary judgment.  Docket No. 55.[1]  For the following reasons, the Court recommends that the District Judge assigned to this case grant the Defendants' motion.

I.      PROCEDURAL HISTORY

      LeSage filed this action on July 3, 2013.  Docket No. 1.  Discovery closed on May 25, 2015.  See Docket No. 52.

_____

[1] On September 22, 2014, the District Court referred this case to the undersigned for full pretrial management, including report and recommendation on dispositive motions.  Docket No. 35.

On June 8, 2015, the Defendants filed the instant motion for summary judgment.  Docket No. 55.  LeSage filed an opposition on July 31, 2015.  Docket No. 61.  He also filed a memorandum of law and several affidavits in support of his opposition.  Docket Nos. 62-66.  However, he did not respond to the Defendants' Local Rule 56.1 statement.  Therefore, on August 6, 2015, the Court entered an order affording LeSage a further opportunity to file a response to the Defendants' Local Rule 56.1 statement.  Docket No. 68.  LeSage filed such a response on September 14, 2015.  Docket No. 70.

II.    FACTS[2]

LeSage is an inmate civilly committed to the Massachusetts Treatment Center ("MTC").[3]  Effective July 1, 2013, Massachusetts Partnership for Correctional Health, LLC commenced providing medical and health services to inmates committed to the Department of Correction.[4]  The prior medical contractor was UMASS Correctional Health.[5]

Defendants Spencer-Faire and Lucy Rounsville are Registered Nurses.[6]  Defendant McLellan is a Nurse Practitioner.[7]

---

[2]  Because this case is before the Court on a motion for summary judgment, the Court sets out any properly disputed facts in the light most favorable to LeSage, the non-moving party.  See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).  The facts are derived from the Defendants Gina Spencer-Faire, Carol McLellan & Lucy Rounsville's Concise Statement of Undisputed Facts (Docket No. 57) ("Def. SOF") and Plaintiff Robert LeSage's Concise Statement of Material Facts (Docket No. 70 at 3-7) ("Pl. Resp.").

[3] Def. SOF ¶ 1; Pl. Resp. ¶ 1.

[4] Def. SOF ¶ 2; Pl. Resp. ¶ 2.

[5] Id.

[6] Def. SOF ¶¶ 3, 5; Pl. Resp. ¶¶ 3, 5.

[7] Def. SOF ¶ 4; Pl. Resp. ¶ 4.

LeSage suffers from hypertension, type 2 diabetes, A-Fib, peripheral vascular disease, elevated cholesterol levels, GERD, severe osteoarthritis, adhesive capsulitis, peripheral neuropathy, bilateral leg weakness, anemia, and hiatal hernia.[8]

In 2010, LeSage began to rely on a wheelchair to get around the facility and he frequently relied on someone to push him.[9]  LeSage alleges that the wheelchair was necessary because his legs became more painful, weaker, swollen, and gave out more often.[10]  In addition, he experienced increased pain on his shoulders, neck and arms which made it more difficult for him to walk to programs and meals.[11]  On November 23, 2011, LeSage was evaluated by a physical therapist who noted that he had become increasingly weak to the point that he required assistance with basic functions.[12]  The physical therapist recommended that LeSage strengthen his trunk and extremities to improve his overall function level with the goal of increasing by ½ his muscle grade.[13]

On or around December 26, 2011, medical staff advised LeSage to push himself around as much as possible in his wheelchair, and he was counseled about the importance of exercise to maintain function.[14]

---

[8] Def. SOF ¶ 6; Pl. Resp. ¶ 6.

[9] Def. SOF ¶ 7; Pl. Resp. ¶ 7.

[10] Pl. Resp. ¶ 7.

[11] Id.

[12] Def. SOF ¶ 7.

[13] Id.

[14] Def. SOF ¶ 8.  LeSage alleges that Spencer-Faire told him that he had to push himself in the wheelchair without the aid of his assistant, Thomas Todd "just after she had threatened and intimidated Mr. LeSage in the H.S.U. before he was to go to court."  Pl. Resp. ¶ 8.  LeSage cites

In 2012, LeSage met with Dr. Mutinga, who is the Head of Gastroenterology at the Lemuel Shattuck Hospital.[15]  Dr. Mutinga evaluated LeSage for GERD disease and did not recommend that LeSage receive an endoscopy at that time.[16]

LeSage continued to work with physical therapy on January 25, April 11, and May 9, 2012.[17]  On December 4, 2012, LeSage had an x-ray of his cervical spine.[18]  The x-ray report indicated "degenerative changes in the lower cervical spine, not significantly changed.  No acute bony abnormality or other significant interval change."[19]

In November of 2012, the medical staff implemented a plan in order to get LeSage to ambulate more frequently with his walker with the ultimate goal of discontinuing his wheelchair.[20]  This plan was implemented as a result of the medical staff's concerns that LeSage had become immobile, as a result of his reliance on a wheelchair, and that he was putting his

---

to the declaration of Kevin Sullivan as support for this statement.  (Docket No. 65).  However, Mr. Sullivan's declaration does not support LeSage's allegation that Spencer-Faire threatened or intimidated him.

[15] Def. SOF ¶ 9.

[16] Id.

[17] Def. SOF ¶ 10; Pl. Resp. ¶ 10.

[18] Def. SOF ¶ 11; Pl. Resp. ¶ 11.  LeSage correctly points out that the x-ray referenced by the Defendants was taken on December 4, 2012, not July 2012.  It appears that the July date in Defendants' statement of fact comes from the report's statement that LeSage's x-ray was being compared to one taken in July 2012.  See Def. Ex. 6 (Docket No. 56-2 at 16).

[19] Def. Ex. 6.

[20] Def. SOF ¶ 12.

health at risk.[21]  Specifically, his legs were swollen, his heart was at risk, and he had an increased risk of blood clots all from prolonged sitting.[22]

LeSage was told that he was to walk daily, seven days a week, from unit A2 to the HSU and he was to walk down the hall and back with his rolling walker.[23]  Medical staff maintained a record of LeSage's compliance with this plan.[24]  LeSage was also placed on a heart healthy diet.[25]  On January 14, 2013, LeSage was told to increase his walking to twice daily.[26]

On January 13, 2013, Rounsville spoke with LeSage at length about the benefits of walking and the importance to muscle tone and circulation.[27]  Defendants allege that LeSage had a negative attitude towards their recommendations while LeSage denies any such negative attitude.[28]

---

[21] Id.

[22] Id.  LeSage alleges that the medical staff's health concerns were a guise for the Defendants' conspiracy to take away his wheelchair.  Pl. Resp. ¶ 12.  However, LeSage has not provided any evidence to support his allegations.  Here, as in responding to some of the other Defendants' statements regarding his treatment, LeSage simply provides his own, unsupported opinions regarding his medical condition and the treatment he should have received.  In several places, LeSage states that "the medical records obtained at discovery are incomplete and do not contain many of the documents, sick slips, etc. that would be used for Exhibits."  See, e.g., Pl. Resp. ¶¶ 7, 11.  However, to the extent that LeSage believed discovery was incomplete he should have filed a motion to compel to obtain any discovery he believed he had not received.  Pro se status does not insulate a party from complying with procedural and substantive law.  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

[23] Def. SOF ¶ 13; Pl. Resp. ¶ 13.

[24] Id.

[25] Id.

[26] Def. SOF ¶ 14; Pl. Resp. ¶ 14.

[27] Def. SOF ¶ 15; Pl. Resp. ¶ 15.

[28] Def. SOF ¶ 15; Pl. Resp. ¶ 15.

On March 13, 2013, LeSage met with Rounsville, who informed him that he was to walk to the medication line, and to lunch, with his rolling walker.[29]

On March 21, 2013, LeSage's wheelchair was discontinued because it was determined that there was no clinical reason to have one.[30]  LeSage was told that he was to use his rolling walker with a seat to go to the gym, medication line, and meals.[31]  He was told that rest periods would be allowed on his journey and that he would have early release from the unit for meals and activities.[32]  On March 23, 2013, Rounsville met with LeSage about using his rolling walker and informed him that he had extra time to attend meals and activities.[33]

On April 3, 2013, after LeSage submitted a sick slip seeking reinstatement of his wheelchair for long distances, he was told that the Superintendent and all DOC staff were on board with his use of a rolling walker and that everyone wanted him to be successful.[34]

On June 14, 2013, LeSage was issued a new rollator walker.[35]  On June 17, 2013, LeSage was evaluated by Dr. Somers for complaints of neck pain, numbness and tingling.[36]  Dr. Somers noted that LeSage's wheelchair had been discontinued and that there was no medical indication

---

[29] Def. SOF ¶ 16; Pl. Resp. ¶ 16.

[30] Def. SOF ¶ 17.

[31] Id.

[32] Id.

[33] Def. SOF ¶ 18; Pl. Resp. ¶ 18.

[34] Def. SOF ¶ 19.

[35] Def. SOF ¶ 21; Pl. Resp. ¶ 21.

[36] Def. SOF ¶ 22.

for the wheelchair.[37]  Dr. Somers' impression was that LeSage had "DJD of the c-spine and muscle strain."[38]  She recommended that muscle rub be applied sparingly to his neck, warm showers/compresses and stretches for fingers, writs and elbows as needed.[39]

LeSage continued to work with physical therapy to increase his mobility on April 17, May 1, July 23, July 29, August 5, August 15, August 27, September 8, and September 16, 2014.[40]  LeSage also attended physical therapy at the Shattuck Hospital on July 29, 2014.[41]

Defendants maintain that as a result of LeSage's increased mobility, he lost weight and his overall health improved.[42]

On February 24, 2015, LeSage was diagnosed with pneumonia.[43]  On March 6, 2015, LeSage was given a wheelchair because he was on two courses of antibiotics that were making him weak.[44]  He was told to use the wheelchair to get to meals but to continue to use the walker in the unit.[45]

---

[37] Id.

[38] Id.

[39] Id.

[40] Def. SOF ¶ 23.

[41] Id.

[42] Def. SOF ¶ 24.

[43] Def. SOF ¶ 25; Pl. Resp. ¶ 25.

[44] Id.  LeSage states that he actually received the wheelchair on February 26, 2015.  Pl. Resp. ¶ 25.

[45] Def. SOF ¶ 25.

On March 20, 2015, LeSage was seen by a physician's assistant who noted that he was in a wheelchair and encouraged him to get up and walk.[46]  The PA noted that LeSage needed to be up and ambulating, that he was capable of walking, and that he was educated on stasis.[47]

LeSage alleges that the decision to discontinue the wheelchair was wrong.  He alleges that extreme pain and weakness made it dangerous for him to use the walker.[48]  He alleges the Defendants ignored his pain and fear of falling.[49]  He also alleges that despite the Defendants' assertions that the staff was supportive of his use of a walker and that he would have extra time to go to meals and programs, he was being hassled by officers for walking slowly and stopping to rest in the hallways.[50]  LeSage denies that his weight loss was a result of increased mobility; rather, he alleges that as a result of being unable to ambulate, he was unable to attend meals.[51] He also denies that his health has improved.  He states that he has increased pain in his legs, neck, back, shoulders, and arms; his legs have become more swollen; he has extreme fatigue and shortness of breath; and has had several bad colds which developed into pneumonia.[52]  LeSage's allegations, however, are largely unsupported by any admissible evidence.  He does provide the affidavit of another inmate, Kevin Sullivan, who states that he had witnessed LeSage fall more

---

[46] Def. SOF ¶ 26.

[47] Id.

[48] Pl. Resp. ¶ 18.

[49] Id.

[50] Pl. Resp. ¶ 19.

[51] Pl. Resp. ¶ 24.

[52] Pl. Resp. ¶ 24.

than once while trying to walk.[53]  However, Mr. Sullivan also states that LeSage never reported

the falls to the staff.[54]  Therefore, there is no evidence before the Court that the Defendants ever

became aware of the alleged falls.

III.     ANALYSIS

A.     Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227

(1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential

to affect the outcome of the suit under the applicable law."  Id.  (quotations and citations

omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the

opposing party can avoid summary judgment only by providing properly supported evidence of

disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may

not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts

showing that there is a genuine issue for trial.[55]  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841

(1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

---

[53] Docket No. 66.

[54] Id.

[55] Here, the pro se plaintiff generally has done a good job in meeting the requirements of
responding to a summary judgment motion.  However, even construing his pleadings liberally,

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  However, "[a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation omitted).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

> B.    LeSage Has Failed To Present Evidence That Defendants
>        Were Deliberately Indifferent To His Medical Needs

LeSage brings his claims under Section 1983.[56]  Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights.  Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).  Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to

---

this Court does not, as required by the law, consider allegations by LeSage that are unsupported by affidavits, depositions, or other documentation.  See Fed. R. Civ. P. 56(c)(1); L.R. 56.1.

[56] In the Complaint, LeSage also references Section 1985.  Docket No. 1 at 1.  Section 1985 confers a private right of action for injuries occasioned when "two or more persons . . . conspire . . . for the purpose of depriving, either directly, or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985.  In order to prevail on a Section 1985 claim, the plaintiff must show, among other things, "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Perez-Sanchez v. Public Building Auth., 531 F.3d 104, 107 (1st Cir. 2008) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  Here, there is no evidence in the record of any racial or otherwise class-based discriminatory animus.  Therefore, to the extent that LeSage intends to bring a claim under Section 1985, summary judgment in favor of the Defendants is warranted.

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-4 (1989).

"A claim under Section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  Defendants do not dispute that they were acting under color of state law.  See, e.g., Docket No. 56 at 4.  However, they contend that LeSage is unable to show that their conduct denied LeSage any rights secured by the Constitution or by federal law.

As an involuntarily committed person, LeSage has a constitutional right to basic and humane medical care provided by his warden, the State.  See Youngberg v. Romeo, 457 U.S. 307, 319 (1982).  Such right is guaranteed by the Fourteenth Amendment's Due Process Clause. Id.  However, courts look for guidance to the Eighth Amendment's "deliberate indifference to serious injury" test in fleshing out the contours of the guarantee.  See Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011); Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002) ("Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied [deliberate indifference] is the same as that used in Eighth Amendment cases.").

Deliberate indifference to a prisoner's serious illness or injury states a cause of action for a violation of the Eighth Amendment under Section 1983.  Estelle v. Gamble, 429 U.S. 97, 105

11

(1976).  To establish an Eighth Amendment violation, LeSage must show that: (1) objectively, the deprivation alleged is sufficiently serious; and (2) subjectively, that Spencer-Faire was deliberately indifferent to his health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A medical need is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990).  The seriousness of an inmate's needs may also be determined by reference to the effect of a delay in treatment.  Id.

An Eighth Amendment claim based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Feeney v. Correctional Medical Services, 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle, 429 U.S. at 105-106).  Deliberate indifference "may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle, 429 U.S. at 104-5.  LeSage can demonstrate deliberate indifference only if the medical attention he received is "so clearly inadequate as to amount to a refusal to provide essential care" and must be "so inadequate as to shock the conscience."  Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (citations omitted).  Mere negligence or medical malpractice does not establish deliberate indifference.  See Farmer, 511 U.S. at 835; Estelle, 429 U.S. at 104.

Although issues concerning state of mind, such as deliberate indifference, are often unsuited to resolution on summary judgment, summary judgment is appropriate when there is no evidence that a plaintiff received treatment "so inadequate as to shock the conscience."  See

Torraco, 923 F.2d at 234; see also Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987) (finding

summary judgment appropriate where the only evidence produced "demonstrated carefully

thought-out medical decisions"); Massey v. Rufo, No. 92-1380, 1994 U.S. App. LEXIS 6202

(1st Cir. 1994) (finding that there was no material question of fact that defendants were not

deliberately indifferent to the plaintiff's needs and that "discovery would not aid plaintiff").

Such is the case here.

      The record before the Court provides no evidence of deliberate indifference on the part of

any of the Defendants.  LeSage's complaints center around the Defendants' involvement in the

decision to have him discontinue use of his wheelchair.  The record shows that the medical staff

determined that continued use of a wheelchair was not necessary and even may have been

detrimental to LeSage.  Def. SOF ¶¶ 12, 15, 17, 22.  They were concerned that LeSage had

become immobile as a result of reliance on a wheelchair and that he was putting his health at

risk.  Def. SOF ¶ 9.  See, e.g., Sistrunk v. Khan, 931 F. Supp. 2d 849, 859 (N.D. Ill. 2013) ("It is

a basic truism that 'the wheelchair is not your friend.'  People who do not work to leave a

wheelchair often find that they remain forever confined to the wheelchair."); Green v. Bressler,

No. C02-5648CRB(PR), 2002 WL 31855308, at *1 (N.D. Ca. Dec. 6, 2002) (noting that a cane

was prescribed instead of a wheelchair because the lack of exercise associated with the

wheelchair could be detrimental to plaintiff's condition).

      Further, medical staff provided him with a rollator walker and medical staff spoke with

the DOC staff to make sure that they were aware of LeSage's needs.  Def. SOF ¶¶ 12, 13, 16, 18,

19, 21.  LeSage was also provided physical therapy in order to increase his mobility.  Def. SOF

¶¶ 10, 23; Pl. Resp. ¶¶ 10, 23.  LeSage's disagreement with the treatment provided or differences

in medical opinion are insufficient to show deliberate indifference.  Ruiz-Rosa v. Rullan, 485

F.3d 150, 156 (1st Cir. 2007).  Accordingly, the Court finds that LeSage has not provided any evidence that the Defendants' involvement in the decision to have him stop using a wheelchair constituted deliberate indifference.

Similarly, LeSage has not shown deliberate indifference with respect to any other medical need by the Defendants individually.[57]  There is no evidence in the record that that he received inadequate medical care for his complaints of pain and numbness in his neck, shoulder and back.  In July and December 2012, LeSage had x-rays of his cervical spine which showed that he had osteoarthritis but it was otherwise normal.  Def. SOF ¶ 11, Def. Ex. 7.  In June 2013, he was evaluated by Dr. Sommers for complaints of neck pain, numbness and tingling.  Def. SOF ¶ 22; Def. Ex. 17.  Dr. Somers noted that LeSage's wheelchair had been discontinued and that there was no medical indication for its use.  Id.  Dr. Somers' impression was that LeSage had "DJD of the c-spine and muscle strain" and she recommended a muscle rub, warm showers and compresses and stretches for the fingers, wrists and elbows as needed.  Id.  When he was diagnosed with pneumonia in February 2015, he was given antibiotics and was told to use his wheelchair to get to meals because his antibiotics were making him weak.  Def. SOF ¶ 25.  In March 2015, he was seen by a physician assistant, who encouraged him to get up and walk.  Def. SOF ¶ 26.

Even assuming that the Defendants were mistaken about the wheelchair and perhaps acted negligently, mere negligence is not sufficient to establish deliberate indifference.  See Estelle, 429 U.S. at 106.  The Court finds that LeSage has failed to point to any evidence that the

---

[57] The specific involvement of each of the individual Defendants in LeSage's medical care is unclear.  However, for purposes of the motion and in viewing the facts in the light most favorable to LeSage, the Court has assumed that all Defendants were involved in all of the alleged conduct.

14

Defendants were deliberately indifferent to his medical needs and, therefore, there is no genuine dispute as to any material fact.[58]   Accordingly, this Court recommends that the District Court grant the Defendants' motion for summary judgment.

## IV.   RECOMMENDATION

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that he grant the Defendants' motion for summary judgment and enter judgment in favor of the Defendants and against LeSage on all of his claims.

## V.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.   The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.   See Fed. R. Civ. P. 72.   The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.   See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[58] Defendants moved for summary judgment on the grounds that they are entitled to qualified immunity.  Docket No. 56 at 3-4.  Because the Court has found that there is no evidence of a constitutional violation, there is no need for further inquiry into the immunity issue.  See Estate of Bennett v. Wainwright, 548 F.3d 155, 168 (1st Cir. 2008) (citation omitted).